Service Employees International Union, Appellant, *v.* Jeannette District Memorial Hospital, Appellee.

Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Appellant, *v.* Jeannette District Memorial Hospital, Appellee.

Argued November 9, 1973, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*Louis B. Kushner,* with him *James B. Brown* and *Rothman, Gordon, Foreman and Groudine,* for appellant, Service Employees International Union.

*James L. Crawford,* Assistant Attorney General, with him *James F. Wildeman,* Assistant Attorney General, *Francis A. Zulli,* Assistant Attorney General, and *Raymond W. Cromer,* Assistant Attorney General, for appellant, Pennsylvania Labor Relations Board.

*John H. Hill,* with him *Nicholas Unkovic, Eric P. Reif, Reed, Smith, Shaw & McClay* and, of counsel, *B. Patrick Costello* and *Costello & Berk,* for appellee.

*Thomas H. Lane,* with him *John E. Krampf* and, of counsel, *Morgan, Lewis & Brockius,* for amicus curiae, The Hospital Association of Pennsylvania.

OPINION BY JUDGE MENCER, January 14, 1974:

On November 23, 1971, the Service Employees International Union, AFL-CIO (Union), filed Charges of Unfair Practices with the Pennsylvania Labor Relations Board (Board), asserting that the Jeannette District Memorial Hospital (Hospital) had committed unfair practices in connection with a representation election for 149 hospital employes conducted by the Board on November 18, 1971. A hearing to receive testimony relative to these charges was held on January 12, 1972, before a Hearing Examiner of the Board. On May 10, 1972, the Board issued a Nisi Decision and Order wherein the Board held that the Hospital had committed an unfair labor practice by refusing the Union's request for a list of names and addresses of the employes, in

violation of Section 1201 (a) (1) of the Act of July 23, 1970, P. L. 563, 43 P.S. §1101.1201 (a) (1).[1]

The Board ordered a second election and the Hospital filed timely exceptions to the Board's order of May 10, 1972. On October 6, 1972, the Board dismissed the Hospital's exceptions and affirmed its Nisi Decision and Order of May 10, 1972. The Hospital appealed to the Court of Common Pleas of Westmoreland County which, by order under date of April 19, 1973, set aside the second election and the Board's final order of October 6, 1972 and ordered that the results of the first election held November 18, 1971, be certified. This appeal followed and we affirm the court below.

The Board's decision was based upon the reasoning of the National Labor Relations Board in the case of *Excelsior Underwear Inc.*, 156 N.L.R.B. 1236 (1966). The *Excelsior* case involved union objections to the certification of the results of elections that the unions had lost at two companies. The companies had denied the unions a list of the names and addresses of employees eligible to vote. The National Labor Relations Board purported to establish the general rule that such a list must be provided, but it declined to apply its new rule to the companies involved in the *Excelsior* case.[2]

---

[1] The pertinent portion of Section 1201 reads: "(a) Public employers, their agents or representatives are prohibited from: (1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act." Article IV, Section 401 (43 P.S. §1101.401) reads: "It shall be lawful for public employes to organize, form, join or assist in employe organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own free choice and such employes shall also have the right to refrain from any or all such activities, except as may be required pursuant to a maintenance of membership provision in a collective bargaining agreement."

[2] Here the Board desires to apply the rule to the hospital involved but acknowledges that it does not intend to apply the rule in the future to all employers. Such application would be just the reverse of the application of the *Excelsior* rule.

We have no doubt that the Board has a wide discretion to ensure the fair and free choice of bargaining representatives. If the Board, either by its rule making power or by direct order to an employer, required disclosure as to names and addresses of employes, it undoubtedly would further the fair election process by affording unions the ease of access to employes that management already possesses. However, an employer can only be subject to this valid exercise of the Board's control over the election process if, and only if, the Board exercises it prior to the holding of the election.[3]

Here the Board had no rule requiring employers to make such a disclosure and did not direct the Hospital to furnish a list.[4] Therefore, we must arrive at the same conclusion reached by the court below that, under the facts of this case, the Hospital was under no legal compulsion to furnish the addresses of the employes when requested by the *Union* to do so.

This conclusion is totally supported by the following language of the United States Supreme Court in *National Labor Relations Board v. Wyman-Gordon Company*, 394 U.S. 759, 166, 89 S. Ct. 1426, 1430, 22 L. Ed. 2d 709, 715 (1969): "Absent this direction [to furnish the list] by the Board, the respondent was under no

---

[3] Policy making by adjudication often cannot be avoided in unfair labor practice cases, since the parties have already acted, but there need not be such a problem in a representation case where the Board may, as part of an election order, during the pre-election adjudicatory process, establish the requirement that an employer in a particular case must produce a list of employes and their addresses.

[4] The Board's fourth finding of fact establishes that the Union did have the names but not the addresses of the 149 employes more than two months before the election. It reads: "4. That a pre-election conference was held before a representative of the Board on September 9, 1971, at which time an eligibility list of one hundred forty-nine (149) names of employes was furnished to the Union by the Hospital without their addresses."

compulsion to furnish the list because no statute and no validly adopted rule required it to do so."

The Union contends that it was the availability of the information that was important and it was of no significance whether the Board or the Union was the requesting party. We must disagree since we cannot accept the premise of the Union that the failure of the Hospital to furnish the addresses of its 149 employes resulted in an unfair election in this case. The record discloses that, at various times between October 4, 1971, and November 18, 1971, the Union mailed letters to all 149 employes, addressed to them individually at the address of the Hospital.[5] On receipt of all of these mailings, the Hospital posted notices on all bulletin boards throughout the Hospital, informing the employes of the arrival of such mail and that they were free to pick up such mail at the Personnel Office. The mail was placed in alphabetical order on a table inside the door of the Personnel Office and the employes could pick up the mail at their convenience without asking anyone for it. The Hospital took no action to deny the employes access to this mail.

There is no doubt that the Union was inconvenienced by being forced to obtain the addresses of employes through telephone directories and from employes inclined to join the Union, but such inconveniences cannot be equated to "interfering, restraining or coercing" employes in the exercise of their right to organize or join an employe organization.

Absent a Board rule requiring disclosure of the addresses of employes, or a request from the Board to do so, the Hospital was not, under the facts of this case, guilty of an unfair labor practice. Therefore, we affirm the setting aside of the Board's order and need not decide whether the Board's order constituted a rule hav-

---

[5] There were at least five such mailings.

ing the effect of law or was an adjudication of a particular controversy. Consequently, we need not decide whether the Board, when carrying out its rule-making function, is subject to the Commonwealth Documents Law, Act of July 31, 1968, P. L. 769, 45 P.S. §1101 et seq.

Order affirmed.