**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BROYHILL COMPANY, Respondent.**

No. 75–1260.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1975.

Decided Jan. 2, 1976.

William H. Bruckner, Nelson, Harding, Marchetti, Leonard & Tate, Houston, Tex., for respondent.

David S. Fishback, Atty., N. L. R. B., Washington, D. C., for petitioner; Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, N. L. R. B., Washington, D. C., on brief.

Before HEANEY, WEBSTER and HENLEY, Circuit Judges.

HEANEY, Circuit Judge.

This case is before the Court on the application of the National Labor Relations Board to enforce its order requiring the Broyhill Company to bargain with the certified representative of its employees. Broyhill concedes its refusal to bargain, but argues that the refusal is justified because the Board's certification was invalid as the bargaining election, on which the certification was based, was not conducted at an appropriate time. We enforce the Board's order.

Broyhill manufactures agricultural, industrial and turf equipment. It employs approximately sixty persons on a year-round basis. From September through May, it employs approximately twenty-five to thirty additional employees, primarily students from a college located six miles from the plant and local farmers. These part-time employees usually work a scheduled shift between 4:30 P.M. and 10:30 P.M. At the end of the school year, most of the college employ-ees apparently terminate their employment, but are told that they are eligible to be rehired the following fall. The farmers are given the same opportunity of reemployment.

On April 19, 1973, District Lodge No. 162, International Association of Machinists and Aerospace Workers, AFL–CIO, filed a petition for certification as representative of certain Broyhill employees for the purposes of collective bargaining. The Board's representation hearing was held on May 17, 1973. On June 15, 1973, the Regional Director directed an election at Broyhill's plant in a unit which included the September-through-May part-time employees. He rejected Broyhill's request that the election be delayed until late September or early October. He stated:

At the time of the hearing on May 17, 1973, there were approximately 60 employees on the Employer's payroll. This appears to be approximately the number of employees employed on a full-time basis throughout the year. The number constitutes approximately 70 percent of the Employer's work force during its busiest part of the year. I therefore find that the present complement of employees constitutes a substantial representative segment for purposes of conducting an immediate election. * * * Accordingly, the Employer's request for postponement of the election is denied. (Citation omitted.)

Broyhill requested a clarification from the Regional Director. In response to that request, the Regional Director stated:

The prior Decision is hereby clarified * * * to provide that seasonal (or regular part-time) employees not employed at the time of the election who have a reasonable expectancy of recall shall be eligible to vote. * * * Since any such employees are eligible voters, their names and addresses, as known to the Employer, should be included on the *Excelsior* list which should be filed with the Regional Of-

fice on or before July 3, 1973. (Citation omitted and emphasis included.) Thereafter, Broyhill filed a timely request for review of the Regional Director's decision with the Board. The Board denied the request.

The representation election was conducted by the Board on August 16, 1973. Eighty-six persons were included on the eligible list. Forty-seven persons voted in the election. The initial tally was twenty-three votes for the Union and nineteen against, with eight ballots challenged.

The Company filed objections to the election. It again contended that the election should have been delayed until late September or early October. On October 11 and 12, 1973, a consolidated hearing was held on the objection, the challenges and related unfair labor practices. It was agreed by the parties that two of the challenges should be withdrawn and another sustained. The Board found that two voters challenged by the Company had been discharged unlawfully and ordered that their votes be counted. *See N. L. R. B. v. Broyhill Company*, 514 F.2d 655 (8th Cir. 1975). The revised tally showed that twenty-five voted for representation and twenty-two against. The Board overruled the election date objection, upholding the Regional Director's decision to deny the Company's request for a postponement. It certified the Union as to the employees' bargaining agent. The Union then requested the Company to bargain with it. The Company refused.

Pursuant to the Union's charge, a complaint was issued on July 17, 1974, alleging that the Company had refused to bargain in violation of §§ 8(a)(5) and (1) of the National Labor Relations Act, as amended, 29 U.S.C. § 151 *et seq.*

The Administrative Law Judge, to whom the complaint was referred for hearing, stated that he was bound by the Board's ruling sustaining the Regional Director and that he would overrule the objection to the election on that ground. The Board, however, considered the objection on its merits. It held:

We find no evidence in the record to support [Broyhill's] position that the date chosen by the Regional Director for holding the election in question was inappropriate and that another date would have been preferable. Indeed, [Broyhill] presented conflicting and contradicting evidence as to alternative dates. Nor do we find any support in the record for the contention that because of the date chosen a substantial number of eligible employees were thereby disenfranchised. To the contrary, the record shows that [Broyhill's] contentions in this regard are merely speculative and without factual support.

The issue before us is whether the Board abused its discretion by scheduling the election for August 16, 1973. *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969); *N.L.R.B. v. Keller Aluminum Chairs Southern, Inc.*, 425 F.2d 709 (5th Cir. 1970); *Macy's Missouri-Kansas Division v. N.L.R.B.*, 389 F.2d 835 (8th Cir. 1968). We find that it did not. While the record is not entirely clear, it does support a finding that there were approximately sixty persons on the payroll at the time of the hearing and at the time of the election. These sixty persons constituted seventy percent of the average complement of eighty-five employees during the period September through May. Moreover, the part-time employees who had been on the payroll in the May preceding the election were included on the eligibility list and were notified by mail of their right to participation in the election.

Broyhill argues that the local farmers on the eligibility list were busy with their crops and could not take time to vote. We find no evidence in the record to support this claim. Moreover, in this day and age, we cannot assume that an undue burden is placed on a farmer, interested in his part-time job, if he is required to take off a few hours to vote in a union election.

Broyhill also argues that the local college students it had employed had left the area and that it did not have their

home addresses. It would seem a rather simple matter for the Company to have obtained the home addresses from the college if it desired to do so. Moreover, we are unwilling to assume that the college would not forward a student's mail to him to his home address.

In cases of this type, the Board is frequently faced with having to balance the rights of employees working on a year-round basis to an immediate election with the rights of those who work seasonally. The balance created here was not an inappropriate one.

Broyhill cites a number of cases as being inconsistent with the Board's decision here. We have examined them and find that they are distinguishable primarily on the grounds that the employers were involved in businesses more seasonal than Broyhill, and that in each case but one, employment increased by a hundred percent in the so-called peak season. See *Millbrook, Inc.*, 204 NLRB 1148 (1973), 83 LRRM 1482 (22 current, 67 at peak); *Kelly Brothers Nurseries, Inc.*, 140 NLRB 82 (1962), 51 LRRM 1572 (47 current, 122 at peak); *California Vegetable Concentrates, Inc.*, 137 NLRB 1779, 1780 (1962), 50 LRRM 1510 (290 current, 620 at peak; *Camp & Felder Compress Co.*, 121 NLRB 871, 872 (1958), 42 LRRM 1481 (4 current, over 100 at peak); *Richard A. Glass Co.*, 120 NLRB 914 (1958), 42 LRRM 1087 (43 current, 80 at peak); *San Fernando Heights Lemon Assn.*, 72 NLRB 372, 376 (1947), 19 LRRM 1174 (44 current, 115 at peak). Broyhill also cites *Elsa Canning Co.*, 154 NLRB 1810 (1965), 60 LRRM 1202, as supporting its position. We read that case differently. We understand it to hold that if an employer maintains its operation on a yearround basis, it is appropriate to conduct an election at any time when a substantial portion of the complement of its employees, that are engaged in the employer's year-round operation, are on the payroll.

What we have said is not to be construed as holding that it would have been an abuse of discretion for the Board to have held the election in September or October. It is only to say that under all of the circumstances, we find no abuse of discretion on the part of the Board.

The Board's order is enforced. Costs will be taxed to the Broyhill Company.