574 F.2d 639
 The COLBY-BATES-BOWDOIN EDUCATIONAL TELECASTING CORPORATION,
Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and The United States of
America, Respondents,
Public Broadcasting Service, Intervenor.
PUBLIC BROADCASTING SERVICE, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and The United States of
America, Respondents,
The Colby-Bates-Bowdoin Educational Telecasting Corporation,
Intervenor.
 Nos. 77-1293 and 77-1387.
 United States Court of Appeals,
First Circuit.
 Argued Dec. 7, 1977.
Decided March 15, 1978.
 
 John L. Tierney, Washington, D.C., with whom Gerald J. Duffy, Washington, D.C., was on brief for The Colby-Bates-Bowdoin Educational Telecasting Corp.
 Theodore D. Frank, Washington, D.C., with whom Harry M. Plotkin, Cynthia L. Hathaway, Arent, Fox, Kintner, Plotkin & Kahn, Norman M. Sinel and Elizabeth L. Shriver, Washington, D.C., were on brief, for Public Broadcasting Service.
 Louis Schwartz, Robert A. Woods, Lawrence M. Miller and Schwartz & Woods, Washington, D.C., on brief for National Association of Educational Broadcasters, Mohawk-Hudson Council on Educational Television, Maryland Center for Public Broadcasting, St. Lawrence Valley Educational Television Council, Rochester Area Educational Television Association, Inc., and Western New York Educational Television Association, Inc., amici curiae.
 Julian R. Rush, Jr., Atty., Springfield, Va., with whom Robert R. Bruce, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, Gregory M. Christopher, Counsel, F.C.C., John Shenefield, Asst. Atty. Gen., John J. Powers, III and Daniel J. Conway, Attys., Dept. of Justice, Washington, D.C., were on brief, for respondents.
 Before ALDRICH and BOWNES, Circuit Judges, and MURRAY, District Judge.*
 ALDRICH, Senior Circuit Judge.
 
 
 1
 An application to the Federal Communications Commission for two certificates of compliance by a local CATV company, Public Cable Company (Cable) of Portland, Maine, has now ripened into a battle to settle an important question affecting the educational television industry. The original objector, Colby-Bates-Bowdoin Educational Telecasting Corporation (Colby), has had its objection sustained, but it is discontented by the manner, and it is joined in this petition for review by Public Broadcasting Service (PBS), intervenor.[1] The National Association of Educational Broadcasters and others have filed an amici curiae brief. Indeed, at this stage alone we have received five briefs supporting petitioners' position.
 
 
 2
 Colby operates a not-for-profit educational station, WCBB, in Augusta, Maine. Metropolitan Portland is within its Grade B signal, or local area. Portland is also within the Grade B compass of two other educational stations. In 1974 Cable sought to carry WGBH-TV, Boston, Massachusetts, on its two systems in metropolitan Portland in addition to the three local educational stations and sundry commercial stations. WGBH is an educational station "distant" to Portland because it does not reach that area with a Grade B broadcast signal. Colby objected to Cable's proposal, pursuant to 47 C.F.R. § 76.61(d),[2] submitting a small amount of viewer data and making general allegations of harm to its essential fund-raising capacity from anticipated loss of revenue from Portland cable viewers siphoned off to WGBH. However, in Public Cable Co., 55 F.C.C.2d 383 (1975), Public Cable I, the Commission approved Cable's carrying WGBH. Relying on its opinion in Amherst Cablevision, Inc., 51 F.C.C.2d 408 (1975), which had been decided after Colby's objections were filed, the Commission held that Colby's generalized objections, unsupported by significant evidence of harm, were speculative, and insufficient to counter the public interest in the widest possible dissemination of educational broadcasting.
 
 
 3
 In a petition for review filed here Colby argued that the Commission had changed the rules midstream and not given it a fair chance to comply, since generalized allegations with even less evidence had been held sufficient to block importation of a distant signal in Norristown Distribution Systems, Inc., 38 F.C.C.2d 350 (1972). Finding some basis for this claim, but without deciding the merits, we remanded the case to the Commission in Colby-Bates-Bowdoin Educ. Telecasting Corp. v. FCC, 1 Cir., 1976, 534 F.2d 11. In addition to directing the Commission to allow Colby to meet the Amherst pleading requirements, we suggested that formal rulemaking might be appropriate in this area, and that the Commission should at least more fully explain its decision if it was changing preexisting understandings. 534 F.2d at 15.
 
 
 4
 On remand the Commission responded with Public Cable Co., 60 F.C.C.2d 490 (1976), Public Cable II, listing ten items of information required for objections under section 76.61(d). Colby, although objecting to the Commission's approach, complied. In Public Cable Co., 64 F.C.C.2d 701 (1977), Public Cable III, the Commission ruled in Colby's favor, denying Cable's proposal to bring WGBH onto its Portland systems. In this opinion, following favorable resolution of Colby's claim of prospective injury from WGBH competition, the Commission reformulated the ten standards of Public Cable II and reduced them to five, eliminating any need to prove specific economic effects, on the ground that such would be presumed from evidence of reduced audience size. In disregard of the proverb's stricture, Colby, although successful, has looked the gift horse in the mouth, and dislikes its teeth. The metaphor is perhaps ill chosen Colby's complaint is not that the teeth show the horse's age, but, rather, that they are new and oversize.
 
 
 5
 No purpose would be served in repeating the Commission's detailed recitation of Colby's factual proof; the most important issue before us is petitioners' claim that Public Cable III's statement of principles should have been reached only by formal rule-making. For this petitioners must, at a minimum, show that it announced substantial changes.
 
 
 6
 In support of their assertion that the Commission has promulgated "new and substantially more difficult pleading standards and burdens of proof," Colby's[3] first complaint is that the Commission failed to recognize that section 76.61(d) is a "go, no-go" rule, permitting an educational station to "interdict" the importation of distant competition simply by objecting. This contention is without merit. Petitioners' attempt to find a negative pregnant in section 76.61(d)'s provision that CATV stations may carry distant educational stations "in the absence of objection," viz., that they are automatically precluded in the presence of objection, is quickly aborted by the requirement that the objection be filed pursuant to "Special relief" section 76.7.
 
 
 7
 While it must be conceded that the Commission's solicitude for educational television has not run at an entirely even pace, it has never reached petitioners' interpretation in decision. Nor has it in language, with the exception of a single off-hand use of the word "interdict" in what was plainly dictum.[4] An "objection filed pursuant to § 76.7" must be supported by evidence. Thus, subsection (c)(1) provides,
 
 
 8
 "The petition shall state the relief requested and may contain alternative requests. It shall state fully and precisely all pertinent facts and considerations relied on to demonstrate the need for the relief requested and to support a determination that a grant of such relief would serve the public interest. Factual allegations shall be supported by affidavit of a person or persons with actual knowledge of the facts, and exhibits shall be verified by the person who prepares them."
 
 
 9
 Other subsections are of comparable tenor. Petitioners overlook the fact that even their most favorable authority, Norristown Distribution Systems, Inc., ante, states,
 
 
 10
 "Section 76.61(d) does not require automatic denial . . . in the face of local educational signal objection. Such objection must be supported by probative evidence." 38 F.C.C.2d at 351.
 
 
 11
 In our finding no merit in petitioners' "go, no-go" contention, we do not in any way withdraw the criticism we addressed to Public Cable I in our previous opinion. Nor do we blame petitioners for feeling that the Commission's treatment of the educational television industry has not been a model of clarity, consistency, or even logic. At the same time, this does not lead us to approve every contention that petitioners advance. This includes petitioners' next point, that it should at least be sufficient to express "generalized objections" to CATV import of distant educational signals. A generalized objection, as distinguished from detailed specifics, could be readily filed in every case. It advances nothing over "go, no-go." It is true that Norristown, standing alone, may have suggested that not much more than generalized objections was needed. However, it did not stand alone. In addition to Amherst Cablevision, ante, and prior to the filing of Colby's objections, were Bridgeport Community Antennae Television Co., 44 F.C.C.2d 214 (1974) ("conclusory" objection is not probative evidence"); Gulf Coast-Bellaire Cable Television, 47 F.C.C.2d 214 (1974) ("fear of an erosion of local support" without "evidence" is insufficient); and Cablecom-General, Inc., 48 F.C.C.2d 607 (1974) (Commission requires "substantial allegations" showing "potential serious adverse effect"). If there is thought to be a difference between Norristown and these later cases, it is Norristown that must be regarded as out of the mainstream.
 
 
 12
 Nor is there substance in petitioners' claim that the Commission has now substituted "formal" procedures for "informal" procedures. In the first place, if this is meant to imply that the Commission has invoked section 76.7 where it was never invoked before, this is contrary to section 76.61(d) itself, as we have already noted. Moreover, section 76.7 does not negative informality. Rather, subsection (b) provides, "The petition may be submitted informally, . . ." Petitioners, in a very real sense, are confusing form with substance the issue is what is to be submitted, not how.
 
 
 13
 Nor, even if the Commission could be said now to have placed more emphasis on the requirements of section 76.7, does it follow that because it has detailed the types of information it desires that the Commission has ceased to regard the educational television industry as entitled to special consideration because of financial fragility. We have reviewed with great care the lengthy progress of this matter, so far as rulemaking procedure was concerned,[5] and would articulate it here if petitioners could point to anything materially supporting their claim that the Commission has shifted the burden of proof. But once petitioners' wishful "go, no-go" thinking has been disposed of, and attention paid to the Commission's consistently announced principle that the widest possible dissemination of educational as well as commercial programming is in the public interest, see e.g., Cable Television Report & Order, 36 F.C.C.2d 143, 180 (1972); Information Transfer, Inc., 38 F.C.C.2d 335, 337 (1972); Bridgeport Community Antennae Television Co., 44 F.C.C. 711, 712 (1974), there is no basis for a claim of changing the burden. The question is how readily is it to be satisfied. It is true that the extent of the objector's burden has seemed heavier in some cases than in others, and that in Public Cable I it was, in our view, extraordinarily heavy. However, in Public Cable III the Commission has retreated from that position.
 
 
 14
 In light of the foregoing, the basic premise for petitioners' claim that the Commission was obliged to adopt a rule-making procedure fails. While we called NLRB v. Wyman-Gordon Co., 1969, 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709, to the attention of the Commission in connection with Colby's claim that new standards should be determined in a rule-making proceeding, although there were four opinions, no Justice called for rule-making in lieu of a decision in a current case in which standards were being orderly developed in an on-going process. This is peculiarly a matter for administrative discretion, and we find no abuse.
 
 
 15
 Finally, as an alternative, petitioners say that if the Commission is to proceed by decision rather than by rule, it must give precise explanations for the changes. Again, this presupposes that the changes were substantial. Basically petitioners are returning to the "go, no-go" and generalized objection arguments already rejected. Given the Commission's premise of wide dissemination, we find nothing either legally or factually offensive, or inadequate, in its Public Cable III opinion. If the Commission at some later date were to abandon, either openly or covertly, its special solicitude for educational stations, this would be another matter. There is no requirement that it explain in detail every action that is claimed to be a variation. The petitions are dismissed.
 
 
 
 *
 Sitting by designation
 
 
 [1]
 PBS brought a separate action against the Commission in the District of Columbia Circuit, which was transferred here under 28 U.S.C. § 2112(a) as Case No. 77-1387, and in which Colby has intervened. This case adds nothing, unless to back up Colby's assertion that its petition is not moot. Since the questions could easily arise again so far as Colby is concerned, if further CATV applications were filed, Colby needs no backup. This opinion covers both actions
 
 
 [2]
 "(d) In addition to the noncommercial educational television broadcast signals carried pursuant to paragraph (a) of this section, any such community unit may . . . also carry any other noncommercial educational signals, in the absence of objection filed pursuant to § 76.7 by any local noncommercial educational station or State or local educational television authority."
 
 
 [3]
 Although petitioners' and amici briefs vary in detail, all follow basically the same pattern
 
 
 [4]
 See Information Transfer, Inc., 38 F.C.C.2d 335, 337 (1972). The word "interdict" was not only dictum, but inaccurate, because the citation given for it contradicted any absolute meaning
 
 
 [5]
 First Report and Order, 38 F.C.C. 683 (1965); Second Report and Order, 2 F.C.C.2d 725 (1966); Notice of Proposed Rulemaking and Notice of Inquiry, 15 F.C.C.2d 417 (1968); Memorandum Order and Opinion, 22 F.C.C.2d 589 (1969); Second Further Notice of Proposed Rulemaking, 24 F.C.C.2d 580 (1970); Commission Proposals for Regulation of Cable Television, 31 F.C.C.2d 115 (1971); Cable Television Report and Order, 36 F.C.C.2d 143 (1972); Reconsideration of the Cable Television Report and Order, 36 F.C.C.2d 326 (1972)