**Ray MARSHALL, Plaintiff,**

v.

**LOCAL UNION NO. 815, UNITED TEXTILE WORKERS, Defendant.**

Civ. No. 2–78–71.

United States District Court,
E. D. Tennessee,
Northeastern Division.

April 9, 1979.

John H. Cary, U. S. Atty. by Robert E. Simpson, Asst. U. S. Atty., Knoxville, Tenn. and Patricia E. Saik, U. S. Dept. of Labor, Nashville, Tenn., for plaintiff.

D. Bruce Shine, Ferguson & Shine, Kingsport, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action by the plaintiff-Secretary of Labor (Secretary) to set-aside an election of officers of the defendant-labor organization, Local Union No. 815, United Textile Workers of America, AFL–CIO (union). 29 U.S.C. § 482(b). Trial was to the Court on March 22–23, 1979.

Both parties are subject to the provisions of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 401, et seq., and all conditions precedent to the institution and prosecution of this lawsuit were met. The union's election of November 29, 1977 within this district was subject to the requirements of 29 U.S.C. §§ 481, et seq. The chief complaining witness, Mr. Coy Pless, exhausted all available internal remedies of his union, including an appeal to its parent international union. This Court has jurisdiction of the subject matter and of the parties.

A majority of the votes cast in such election were required for election, in which 1,242 votes were cast for the office of president: 50 or 60 of which were cast between 5:00 o'clock, p. m., and 7:00 o'clock, p. m., on the day of election. None of the candidates received a majority of the votes cast, and a runoff election was conducted subsequently. Mr. Pless received the 3d greatest number of votes therein, which was 36 less than that the candidate receiving the 2d greatest number of the votes cast received.

■ The Secretary claimed that the union failed to provide adequate safeguards to insure a fair election within the meaning of 29 U.S.C. § 481(c). The only safeguard which the union might have taken, and did not, was the prohibition of campaigning by and for the candidates anywhere in the headquarters building of the union wherein the election was held. The safeguard taken was adequate in this instance: campaigning

was not allowed within the immediate polling area, *cf. Hodgson v. United Mine Workers of America,* D.C.N.Y. (1972), 344 F.Supp. 17, 30[11].

The election was conducted in the downstairs level of the headquarters building of the union. There was no campaigning by or for candidates in such downstairs area, and campaigning in the upstairs level of such structure—separated by a flight of stairs from the downstairs level—had no effect on the outcome of the election.

Mr. Pless campaigned and electioneered through the primary election day on such upstairs level, commencing at or before 5:00 o'clock, a. m., when the polls were opened for voting. For the first 12 hours of the election, he greeted incoming members of the union, shook hands with them, exchanged pleasantries with them, and passed-out cards espousing his candidacy.

At about 5:00 o'clock, p. m., of that day, Mr. Pless solicited the vote for himself of Mr. James ("Big Jim") Moore, a candidate for reelection to an office of chief steward of the union. Mr. Moore advised Mr. Pless: " * * * I wouldn't vote for you if you were the only candidate running. * * * " He gave as his reason for his opinion his disapproval of an anonymous circular Mr. Pless had authored and caused to be distributed in the election. Mr. Moore accused Mr. Pless of " * * * lying * * * " in this circular, called him " * * * a s__ o_ a b____ * * * " and threatened to " * * * stomp * * * " Mr. Pless' " * * * a__ * * * ".

Mr. Pless feigned lack of knowledge of the campaign literature to which Mr. Moore alluded; whereupon Mr. Moore assured Mr. Pless that he knew whereof Mr. Moore spoke. Mr. Moore was obviously very angry with Mr. Pless, and Mr. Pless apologized if his statements in the campaign literature had offended Mr. Moore and reminded Mr. Moore that he (Mr. Moore) had had the right to counter any statement(s) which had been made in the circular.

Mr. Pless walked-away from Mr. Moore, who followed him and continued to "heckle" him, repeating several times that Mr. Pless

had " * * * lied * * * " with his statement in the circular. Mr. J. B. Bruce, Jr., the salaried business manager of the union, had been asked by yet another candidate, Ms. Kay Holt, to ask " * * * that big fellow * * * " to leave the area where she was campaigning. Mr. Bruce summoned Mr. Moore into a nearby office and caused him to remain therein for about an hour.

After this episode with Mr. Moore, Mr. Pless testified to his subjective feeling that because of it he lost his earlier spirit in campaigning to the extent that he was no longer as effective as before in supporting his own candidacy. Although he continued to pass-out his cards to incoming prospective voters for the remainder of the election, Mr. Pless was of the opinion that the interference with his self-support by Mr. Moore had caused him to get a minimum of 37 less votes than his earlier effective campaigning would have produced.

■ The Secretary claims that Mr. Moore, a member of the union, subjected Mr. Pless, a member of the union in good standing, to improper interference and thereby denied him his right to support his candidacy for president of the union within the contemplation of 29 U.S.C. § 481(e). Assuming the truth of Mr. Pless' subjective assessment of the effect of the interference of Mr. Moore, and that it chilled Mr. Pless' full and active further participation in the affairs of his union, *American Federation of Musicians v. Wittstein* (1964), 379 U.S. 171, 182–183, 85 S.Ct. 300, 13 L.Ed.2d 214, 221, no violation of § 481(e) occurred.

Everything Mr. Moore had to say to Mr. Pless in his angry, profane, and (conceivably) threatening manner, related to, and grew out of, incidents relating to union affairs; no other topic or subject was addressed in any way. Thus, what Mr. Moore had to say was protected by 29 U.S.C. § 411(a)(2). *See Pearl v. Tarantola,* D.C. N.Y. (1973), 361 F.Supp. 288, 293[6].

■ Labor's "bill of rights" guaranteed to Mr. Moore and " * * * [e]very member of any labor organization * * * the

**616**

right to meet * * * with other members * * * and to express any views, arguments or opinions. * * * " 29 U.S.C. § 411(a)(2); *Retail Clerks Union, Local 648 v. Retail Clerks Int. Ass'n,* D.C. D.C. (1969), 299 F.Supp. 1012, 1020[9]. " * * * If union democracy is to be preserved, members must not lose the protections of free expression because they decide to proceed on one basis rather than another. * * * " *Ibid.,* at 1024[20]. Therefore, while Mr. Moore's "heckling" of Mr. Pless may not have been gentlemanly; while it may have indeed interfered with Mr. Pless' continuing to support his own candidacy with the zeal he may have desired; that interference cannot be deemed "improper" within the meaning of § 481(e). The right of free speech guaranteed by 29 U.S.C. § 411(a)(2) was broad enough to apply to even libelous speech, *Salzhandler v. Caputo, infra,* and speech which was malicious, *Cole v. Hall,* C.A.2d (1965), 339 F.2d 881.

"Improper interference" occurred where the president of a union coerced a member in good standing who was a candidate for a union office into withdrawing from the competition by warning him (falsely) that his running might jeopardize his pension. *Shultz v. Radio Officers' U. of United Telegraph Wkrs.,* D.C.N.Y. (1972), 344 F.Supp. 58, 64 esp. [4]. It occurred where a union sought to utilize a provision of its constitution, proscribing appeals for local funds which had not been approved by its international board, to prevent an organization of union leaders' raising funds to finance litigation. *Retail Clerks Union, Local 648 v. Retail Clerks Int. Ass'n, supra,* 299 F.Supp. at 1024, 1025[20]. In an analogous situation involving another "interference" statute, *viz.* 29 U.S.C. § 158(a)(2), an order of the National Labor Relations Board compelling an employer to provide a union with a list of the names and addresses of its employees did not force the employer to interfere improperly with a labor organization. *Wyman-Gordon Company v. N. L. R. B.,* C.A. 1st (1969), 397 F.2d 394, 396[1], reversed (but affirmed on this point) *sub nom. NLRB v. Wyman-Gordon Co.* (1969), 394 U.S. 759, 767, 89 S.Ct. 1426, 22 L.Ed.2d 709, 715–716[4].

Mr. Moore " * * * had a right to speak his mind and spread his opinions * * whether his statements were true or false. * * * The Congress has decided that it is in the public interest that unions be democratically governed and toward that end that discussion should be free and untrammeled. * * * " *Salzhandler v. Caputo,* C.A.2d (1963), 316 F.2d 445, 451[7]. Therefore, Mr. Moore's alleged interference with Mr. Pless' support of his own candidacy can hardly be termed " * * * improper. * * * "

Accordingly, it is the decision of this Court that the plaintiff-Secretary hereby is DENIED all relief. Rule 58(1), Federal Rules of Civil Procedure.