**Slip Op. 01-16**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                            :
NTN BEARING CORPORATION OF                  :
AMERICA, NTN CORPORATION,                   :
AMERICAN NTN BEARING                         :
MANUFACTURING CORPORATION, NTN              :
DRIVESHAFT, INC. and NTN-BOWER              :
CORPORATION;                                :
                                            :
NSK LTD. and NSK CORPORATION;               :
                                            :
KOYO SEIKO CO., LTD. and KOYO               :
CORPORATION OF U.S.A.,                      :
                                            :
            Plaintiffs and                  :
            Defendant-Intervenors,          :
                                            :
            v.                              :   Consol. Court No.
                                            :   97-10-01801
UNITED STATES,                              :
                                            :
            Defendant,                       :
                                            :
            and                             :
                                            :
THE TORRINGTON COMPANY,                     :
                                            :
            Defendant-Intervenor            :
            and Plaintiff.                   :
_____:


[Commerce's <u>Remand Results</u> are affirmed in their entirety. Case dismissed.]


    <u>Barnes, Richardson & Colburn</u> (<u>Donald J. Unger</u>, <u>Kazumune V. Kano</u>, <u>Carolyn D. Amadon</u> and <u>Shannon N. Rickard</u>) for NTN Bearing Corporation of America, NTN Corporation, American NTN Bearing Manufacturing Corporation, NTN Driveshaft, Inc. and NTN-Bower Corporation ("NTN").

    <u>Lipstein, Jaffe & Lawson, L.L.P.</u> (<u>Robert A. Lipstein</u>, <u>Matthew P. Jaffe</u> and <u>Grace W. Lawson</u>) for NSK Ltd. and NSK Corporation ("NSK").

Powell, Goldstein, Frazer & Murphy LLP (Neil R. Ellis and Elizabeth C. Hafner) for Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A. ("Koyo").

Stuart E. Schiffer, Deputy Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Velta A. Melnbrencis, Assistant Director); of counsel: Patrick V. Gallagher, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for defendant.

Stewart and Stewart (Terence P. Stewart and Geert De Prest) for The Torrington Company ("Torrington").

Dated: February 23, 2001

**JUDGMENT**

## I.   Standard of Review

The Court will uphold Commerce's redetermination pursuant to the Court's remand unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).

## II.  Background

On June 5, 2000, this Court issued an opinion and order directing the United States Department of Commerce, International Trade Administration ("Commerce"), to: (1) annul all findings and conclusions made pursuant to the duty-absorption inquiry; (2) make adjustments pursuant to 19 U.S.C. § 1677a(c) (1994) to § 1677a(a)'s starting price for determining export price ("EP"); (3) make adjustments pursuant to § 1677a(c) and (d) to § 1677a(b)'s starting price for determining constructed export price ("CEP"); (4) articulate how the record supports its decision to recalculate NTN's home market indirect selling expenses without regard to level of trade; (5) clarify how Commerce complied with 19 U.S.C. §§ 1677e and 1677m (1994) by using facts available and applying an adverse inference with respect to NTN's alleged zero-price sample sales and, if Commerce determines that it conformed with the statutory framework, to include NTN sample sales in its United States sales database or, if Commerce determines that it did not adhere to all of the statutory prerequisite conditions, to give NTN the opportunity to remedy or explain any deficiency regarding its sample sales; and (6) clarify whether NTN was provided with notice and opportunity to respond pursuant to § 1677m(d) with regard to its cost of production ("COP") and constructed value ("CV") data. See NTN Bearing Corp. of America v. United States, 24 CIT ___, 104

F. Supp. 2d 110 (2000). The administrative determination underlying the Court's decision in <u>NTN Bearing</u> is entitled <u>Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews</u> ("<u>Final Results</u>"), 62 Fed. Reg. 54,043 (Oct. 17, 1997), as amended, <u>Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore[,] Sweden and the United Kingdom; Amended Final Results of Antidumping Duty Administrative Reviews</u>, 62 Fed. Reg. 61,963 (Nov. 20, 1997).

On September 5, 2000, Commerce submitted its <u>Final Results of Redetermination Pursuant to Court Remand</u> ("<u>Remand Results</u>"). In order to comply with the Court's decision in <u>NTN Bearing</u>, Commerce: (1) annulled all findings and conclusions made pursuant to its duty-absorption inquiry with respect to Koyo, NSK and NTN; (2) deducted the expenses associated with packing for export and freight delivery arrangements from the price used in the level-of-trade analyses; (3) articulated the reason why it recalculated NTN's home-market selling expenses without regard to level of trade; (4) provided NTN with an opportunity to remedy the deficiencies in information regarding its sample sales and, upon finding that NTN did not receive consideration for its zero-priced

U.S. sample transactions, removed these sales from its analysis and recalculated NTN's margins; (5) provided NTN with an opportunity to remedy the deficiencies in information regarding its affiliated-party inputs and, upon NTN's refusal to supply information, used facts available to adjust NTN's reported costs; and (6) corrected certain transcription errors in its draft analysis memorandum.

Torrington and NTN submitted comments on the draft results issued by Commerce on August 18, 2000. NTN, Koyo and Torrington submitted comments to this Court regarding the Remand Results. Commerce submitted a reply to the parties' comments. NSK did not submit any comments.

## III. Contentions of the Parties

Torrington continues to believe that Commerce has inherent authority to conduct the absorption inquiries in any review. Torrington also believes that the Court exceeded its power on judicial review in directing Commerce to annul its findings instead of permitting Commerce to reach a determination consistent with the Court's order.

Responding to Torrington's contentions, Koyo limits its comments to the issue of the legality of Commerce's duty-absorption inquiries. Koyo maintains that Torrington is raising the same arguments that the Court has repeatedly rejected and that

Torrington provides no reason for the Court to reconsider the issue.

NTN agrees with Commerce's elimination of its zero-priced U.S. sample transactions from its margin analysis. NTN disagrees with Commerce's use of facts available regarding NTN's affiliated-party inputs for COP and CV calculations. Specifically, NTN maintains that it was not required to respond to Commerce's request for information, since the Court did not open the record on this issue. NTN believes that Commerce should have used the information already on the record and should not have resorted to facts available.

In addressing NTN's comments, Torrington argues, in essence, that the Court did not need to specifically direct Commerce to open the record in order for such action to be permissible. Torrington argues that such an overly narrow interpretation of the remand order would unlawfully diminish Commerce's fact-finding role.

Replying to NTN's comments, Commerce contends that it gave NTN the opportunity, through responses to a supplemental questionnaire, to remedy or explain the items for which Commerce needed clarification. Upon NTN's refusal to submit information regarding affiliated-party inputs and its insistence that Commerce use its data as reported, Commerce resorted to best information available under 19 U.S.C. § 1677b(e)(1) (1994). Commerce argues that

although the Court did not order Commerce to open the record, Commerce has the discretion to open it since the Court did not prohibit it. Furthermore, Commerce argues that the information NTN provided in the original review did not allow it to determine in which bearing models the purchased components were used, making Commerce unable to restate NTN's costs on a model-specific basis. Commerce was then forced to resort to facts otherwise available. Commerce argues that the Court should not allow a party to benefit from its unwillingness to provide information for Commerce to use in complying with the statute.

## IV. Analysis

### A. Duty Absorption

This Court has repeatedly held that Commerce lacks statutory authority under 19 U.S.C. § 1675(a)(4)(1994) to conduct duty-absorption inquiries for antidumping duty orders issued prior to the January 1, 1995 effective date of the Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994). See SNR Roulements v. United States, 24 CIT ___, ___, 118 F. Supp. 2d 1333, 1337 (2000); SKF USA Inc. v. United States, 24 CIT ___, ___, 116 F. Supp. 2d 1257, 1260 (2000); SKF USA Inc. v. United States, Slip Op. 00-106, 2000 WL 1225803, *3 (Aug. 23, 2000); RHP Bearings Ltd. v. United States, 24 CIT ___, ___, 110 F. Supp. 2d 1043, 1052-53 (2000); FAG Italia S.p.A. v. United States, Slip Op. 00-82, 2000 WL

978462, *5 (July 13, 2000); <u>SKF USA Inc. v. United States</u>, Slip Op. 00-81, 2000 WL 977373, *3 (July 12, 2000); <u>NTN Bearing Corp. of America v. United States</u>, 24 CIT ___, ___, 104 F. Supp. 2d 110, 117 (2000); <u>SKF USA Inc. v. United States</u>, Slip Op. 00-58, 2000 WL 726944, *3 (June 1, 2000); <u>SKF USA Inc. v. United States</u>, 24 CIT ___, ___, 94 F. Supp. 2d 1351, 1357-59 (2000). Torrington presents no arguments compelling the Court to reconsider the issue and hold otherwise.

Similarly, the Court finds Torrington's arguments regarding the authority of the Court to fashion a remand order unpersuasive. Torrington believes that the Court exceeded its power on judicial review in directing Commerce to annul its findings instead of permitting Commerce to reach a determination consistent with the Court's order.

Torrington is incorrect. The Court found that Commerce was without authority under the antidumping statute to conduct a duty-absorption inquiry for the subject review; the only action that Commerce could take in order to remain within the bounds of the Court's interpretation of the law would be to annul the findings and conclusions made pursuant to Commerce's erroneous interpretation of the law. Thus, the result here would necessarily be the same whether the Court ordered Commerce to annul its findings or, more generally, ordered Commerce to produce a

determination consistent with the opinion.  Since the Court has already declared Commerce's interpretation of the law is improper, and there is no additional fact-finding to be done nor any discretionary action to be taken by Commerce, granting Torrington's request to remand the case and instruct Commerce to take action consistent with the Court's opinion would be "an idle and useless formality."  NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766-67 n.6 (1969);  cf. United States v. Roses Inc., 706 F.2d 1563, 1568-70 (Fed. Cir. 1983) (court acted improperly in ordering agency to conduct an investigation when the decision of whether to conduct such investigation depends on the application of agency expertise); Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 679 (1st Cir. 1998) (case remanded for agency's reconsideration upon court's finding that agency applied incorrect legal standard and, therefore, reached questionable factual determination).

In essence, Torrington is asking the Court to permit Commerce another opportunity to present its arguments regarding the lawfulness of its duty-absorption inquiry.  As the Court has already stated, such an inquiry has been repeatedly found to be unlawful.

Accordingly, Commerce's action in annulling all findings and conclusions made pursuant to its duty-absorption inquiry with respect to Koyo, NSK and NTN is affirmed.

B.    Commerce's Use of Facts Available for NTN's Affiliated-
      Party Inputs in Calculating COP and CV

During the period of review, NTN purchased certain components from an affiliated supplier that were used in the manufacture of ball and cylindrical roller bearings. See Commerce's Final Results Mem. for NTN at 5. NTN's affiliated producer submitted COP data for certain components sold to NTN. See Affiliated Producer's Letter to Commerce (Sept. 9, 1996) (Case No. A-588-804, Fiche 208, Frame 1, Proprietary Doc. 25). Commerce found that "[s]ome of the components NTN purchased from . . . [the] affiliated supplier . . . were transferred at prices below the cost of production." Commerce's Final Results Mem. for NTN at 5. Because Commerce determined that the record was unclear as to which bearing models NTN used the purchased components in, Commerce was unable to adjust NTN's COP and CV data on a model-specific basis. See id. Therefore, using "facts otherwise available," Commerce calculated the average percentage difference between the transfer price and the cost for the components sold to NTN by its affiliated supplier. See id. at 5-6. Commerce then adjusted NTN's COP and CV upward by this average percentage difference. See id. at 6; Final Results, 62 Fed. Reg. at 54,065.

NTN argued that Commerce's adjustment to NTN's COP and CV data was contrary to law because Commerce resorted to facts available

and made an adverse inference without giving NTN the opportunity to provide the data Commerce determined was lacking from the record. See NTN's Mem. Supp. Mot. J. Agency R. at 19. Specifically, NTN asserts that Commerce should not have resorted to facts available because: (1) NTN fully responded to Commerce's requests for information and that Commerce at no time indicated that NTN's data was unclear or insufficient, that is, Commerce never asked for clarification of the information NTN submitted, see id. at 20; and (2) citing subsections (1) and (2) of 19 U.S.C. § 1677e(a), "NTN did not withhold information, fail to provide information by the deadline or in the manner requested, or impede the investigation in any manner," id. at 21. NTN also noted that Commerce may only make an adverse inference when a "party has failed to cooperate by not acting to the best of its ability." Id. at 22 (quoting § 1677e(b)). NTN, therefore, asserted that since Commerce never asked for any additional information or clarification of the data which was submitted concerning the affiliated supplier's inputs, Commerce could not make an adverse inference and apply it to all of NTN's COP and CV data. See id. Accordingly, NTN requested that the Court remand the issue and order Commerce to use NTN's submitted COP and CV data. See NTN's Reply Br. at 25.

Commerce conceded that NTN did not meet any of the elements under paragraph (2) of the facts available provision, § 1677e(a),

that is, "NTN did not withhold information, fail to provide information by the deadline specified or in the manner requested, or impede the investigation in any manner." See Def.'s Mem. in Partial Opp'n to Mot. J. Agency R. at 79. Nevertheless, Commerce noted that NTN "overlook[ed] paragraph '(1)' of facts available provision, which mandates the use of facts otherwise available "'if the necessary information is not available on the record.'" Id. (quoting § 1677e(a)(1)). Commerce argued that when it found the necessary information was not available on the record, it decided to use other information on the record to reflect the fact that NTN purchased certain components from an affiliated supplier that were transferred at prices below the COP. See id. at 81. Commerce explained that "the other information on record allowed [it] to adjust NTN's COP and CV without having to reject NTN's reported information in its entirety." Id.

Further, Commerce asserted that it did not "determine to make an adverse inference in choosing what information to use as facts available." Id. Rather, Commerce reasoned "given that the necessary information was not available on record, [it] used other information to address the problem with NTN's supplier's transfer prices." Id. Commerce, therefore, maintains that "[u]nder these circumstances, [its] use of facts available was reasonable." Id.

In response to the parties' contentions, this Court stated

that although Commerce relies on paragraph (1), not (2), of §
1677e(a) for using facts available, the section requires that
Commerce meet the requirements of § 1677m(d) before resorting to
facts available.  The Court also noted that § 1677m(d) states that
if Commerce determines that a response to a request for information
does not comply with the request, Commerce shall promptly inform
the respondent submitting the response of the deficiency and permit
the respondent an opportunity to remedy or explain the deficiency.

The Court found that the Final Results did not clearly
articulate whether NTN was provided with such notice and the
opportunity to provide a remedial response regarding which ball and
cylindrical roller bearing models the purchased components were
used in by NTN.  Since there appeared to be a lack of § 1677m(d)
notice, the Court remanded the issue to Commerce to clarify whether
NTN was provided with notice and opportunity to respond pursuant to
§ 1677m(d).

In contesting the Final Results, NTN opposed Commerce's use of
facts available on the grounds that Commerce did not give NTN
notice and the opportunity to respond regarding which ball and
cylindrical roller bearing models the purchased components were
used in by NTN. The supplemental questionnaire provided to NTN by
Commerce upon remand gave NTN the opportunity to supply information
regarding samples and prototypes and affiliated-party inputs, and

to identify by model number each model in the COP and CV databases that incorporates affiliated-party inputs.  See Supplemental Questionnaire, Sections C and D.  Instead of supplying the necessary information with respect to the affiliated-party inputs, NTN refused on the grounds that the Court did not direct Commerce to ask for the relevant information and continued to insist that Commerce use NTN's COP and CV data.  In its comments to the Remand Results, Torrington argues that the Court did not need to direct Commerce to open the record, but that Commerce was permitted to request additional information on its own initiative.  The Court agrees.

It was not necessary for the Court to specifically direct Commerce to request the information in order for such action to be permissible.  As long as the Court does not forbid Commerce from considering new information, it remains within Commerce's discretion to request and evaluate new data. See Laclede Steel Co. v. United States, 19 CIT 1076, 1078, 1995 WL 476716, at *2 (Aug. 11, 1995) ("Any decision to expand the administrative record upon remand is well within [Commerce's] discretion, absent express language from the Court barring such action.");  Elkton Sparkler Co. v. United States Department of Commerce, 17 CIT 344, 346, 1993 WL 179266, at *2 (May 7, 1993) (Since the remand order did not bar Commerce from investigating information, and since plaintiff raised

the issue in its complaint, Commerce did not exceed the scope of the remand order by investigating information in the remand proceeding.).  Since the Court did not bar Commerce from soliciting additional information, Commerce's decision to provide NTN the opportunity to supply the information was a proper exercise of its discretion, especially when one considers that NTN's arguments against Commerce's determination in the <u>Final Results</u> centered around the absence of such an opportunity.  The remand order aimed to remedy Commerce's failure to comply with the statutory requirements of notice and opportunity to respond; it would be anomalous for the Court to adopt the overly-restrictive position advanced by NTN and to determine that it was improper for Commerce to afford this opportunity to NTN upon remand.  Since the Court did not bar Commerce from seeking additional information, and the lack of the information was the basis of NTN's complaint concerning the underlying proceedings, the Court holds that Commerce did not exceed the scope of the remand order in providing NTN the opportunity to remedy deficiencies in the information provided to Commerce.

Additionally, Commerce's decision to resort to facts available was supported by substantial evidence and in accordance with law. The antidumping statute mandates that Commerce use "facts otherwise available" (commonly referred to as "facts available") if

"necessary information is not available on the record" of an antidumping proceeding. 19 U.S.C. § 1677e(a)(1). In addition, Commerce may use facts available where an interested party or any other person: (1) withholds information that has been requested by Commerce; (2) fails to provide the requested information by the requested date or in the form and manner requested, subject to 19 U.S.C. § 1677m(c)(1), (e); (3) significantly impedes an antidumping proceeding; and (4) provides information that cannot be verified as provided in 19 U.S.C. § 1677m(i). Id. § 1677e(a)(2)(A)-(D). Section 1677e(a) provides, however, that the use of facts available shall be subject to the limitations set forth in 19 U.S.C. § 1677m(d).

Section 1677m, which was enacted as part of the Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994), is "designed to prevent the unrestrained use of facts available as to a firm which makes its best effort to cooperate with [Commerce]." Borden, Inc. v. United States, 22 CIT ___, ___, 4 F. Supp. 2d 1221, 1245 (1998). Section 1677m(d), entitled "[d]eficient submissions," provides that if Commerce determines that a response to a request for information does not comply with the request, the agency shall promptly inform the person submitting the response of the deficiency and permit that person an opportunity to remedy or explain the deficiency. If the remedial response or explanation

provided by the party is found to be "not satisfactory" or untimely, Commerce may, subject to § 1677m(e), disregard "all or part of the original and subsequent responses" in favor of facts available.  Id. § 1677m(d).

Commerce found that some of the components purchased by NTN from affiliated suppliers were transferred at prices below the cost of production; however, the information supplied by NTN was inadequate to permit Commerce to determine in which bearing models the purchased components were used.  See NTN Bearing, 24 CIT at ___, 104 F. Supp. 2d at 144.  Upon remand, Commerce gave NTN an opportunity to remedy or explain the deficiency in information in accordance with the requirement of § 1677m(d), and NTN refused. Because of NTN's refusal, Commerce was still unable to use the information NTN had previously reported and resorted to facts otherwise available.  Commerce explained its methodology as follows:

> Because NTN did not respond to our requests for additional information, we are unable to use the information NTN reported.  Therefore, we must use the facts available in order to adjust NTN's reported costs to use the higher of transfer prices or the affiliate's COP.  As facts available, we . . . calculat[ed] the average difference between the affiliate's COP and transfer prices and adjust[ed] all of NTN's reported costs by this difference[]. We find this to be the best choice of facts available because the adjustment is based on data which NTN reported and is, therefore, the most reasonable estimate of what the adjustment would be if we were able to merge properly the affiliated-party input data with NTN's COP data.

The record demonstrates that the affiliate's COP is higher than the transfer price for some affiliated-party inputs. Further, the Court has upheld our methodology of using the highest of the transfer price, the market price, or the affiliate's COP to state the cost of affiliated-party inputs in its decision in <u>NTN</u>. Accordingly, we have applied the facts available by calculating the average difference between the affiliate's COP and transfer prices and adjusting all of NTN's reported costs by this difference.

<u>Remand Results</u> at 9-10. Because Commerce did not possess the information it needed to determine in which bearing models the purchased components were used, and NTN refused to supply this information once given the opportunity, Commerce's resort to facts available was appropriate. The Court sustains Commerce's determination, finding it to be supported by substantial evidence and in accordance with law.

## V. Conclusion

The Court affirms Commerce's decision to: (1) annul all findings and conclusions made pursuant to its duty-absorption inquiry with respect to Koyo, NSK and NTN; and (2) provide NTN with an opportunity to remedy the deficiencies in information regarding its affiliated-party inputs and, upon NTN's refusal to supply information, use facts available to adjust NTN's reported costs. The other aspects of Commerce's <u>Remand Results</u> are uncontested and, upon a review of the results, the Court finds them supported by substantial evidence on the record and in accordance with law.

Accordingly, it is hereby

**ORDERED** that the <u>Remand Results</u> are affirmed in all respects;
and it is further

**ORDERED** that since all other issues have been decided, this
case is dismissed.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE

Dated:    February 23, 2001
          New York, New York