# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2023

Lyle W. Cayce
Clerk

_____

No. 21-30163

_____

GARRY L. LEWIS; G. LEWIS-LOUISIANA, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

UNITED STATES OF AMERICA; MICHAEL C. WEHR, *Major General*; MICHAEL CLANCY, *Colonel*; UNITED STATES ARMY CORPS OF ENGINEERS,

*Defendants—Appellees*,

CONSOLIDATED WITH

_____

No. 23-30387

_____

GARRY L. LEWIS; G. LEWIS-LOUISIANA, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

UNITED STATES OF AMERICA; UNITED STATES ARMY CORPS OF ENGINEERS; STEPHEN MURPHY, *Colonel*; DIANA HOLLAND, *Major General*,

*Defendants—Appellees*.

No. 21-30163
c/w No. 23-30387

———————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:18-CV-1838, 2:21-CV-937

———————————————

Before Jones, Higginson, and Duncan, *Circuit Judges*.
Edith H. Jones, *Circuit Judge*:

Appellants are landowners (referenced together as "Lewis") caught in the coils of the United States Army Corps of Engineers' (USACE's) assertions of Clean Water Act jurisdiction over "wetlands" on their inland Louisiana property for going on ten years. During this period, two Supreme Court cases, three Approved Jurisdictional Determinations (AJDs), two federal court cases resulting in two remand orders, and two appeals to this court have transpired. Enough is enough.

We hold that the Supreme Court's recent decision in *Sackett v. EPA* controls the undisputed facts here and mandates that Appellants' property lacks "wetlands [that] have 'a continuous surface connection to bodies that are "waters of the United States" in their own right, so that there is no clear demarcation between "waters" and wetlands.'" 143 S. Ct. 1322, 1340 (2023) (quoting *Rapanos v. United States*, 547 U.S. 715, 742, 126 S. Ct. 2208, 2226 (2006) (plurality opinion of Scalia, J.)). Consequently, the property at issue is not subject to federal jurisdiction.

## I. Background

Appellants own substantial real property in Livingston Parish, Louisiana, that has been used primarily as a pine timber plantation for decades. The land at issue here comprises two roughly twenty-acre tracts of "grass-covered, majority dry fields, with gravel logging and timber roads on two sides of each tract." Hoping to develop the property, in August 2013,

No. 21-30163
c/w No. 23-30387

Lewis first sought a USACE AJD, 33 C.F.R. § 320.1(a)(2), (6),[1] which went unanswered until his formal request two years later. After seven site visits, USACE concluded in 2016 that 22% of one tract and 38% of the other contained wetlands subject to CWA jurisdiction.[2] With these vague percentage designations, the entire forty acres was practically denominated federal wetlands that require federal permits before further development can occur. *See* 33 U.S.C. § 1344(a). Lewis appealed to the USACE division commander and secured administrative reconsideration. The result was another, substantially unchanged AJD in November 2017.

Lewis filed suit in federal court for review of the 2017 AJD, alleging *inter alia* that the Corps' action was arbitrary and capricious under the APA. The district court carefully and extensively reviewed the record, and it found the administrative record insufficient to support the conclusion that wetlands on the property met the "adjacency" test or had a "significant nexus" to traditional navigable waters. The court set aside the 2017 AJD and remanded to USACE for further review.

On remand, USACE revised the data and applied a then-recently issued regulation (the 2020 Navigable Waters Protection Rule[3]). The remand resulted in a 2020 AJD that acknowledged the absence of jurisdictional wetlands on the western 20-acre tract, but nearly doubled the

---

[1] An AJD is "a Corps document stating the presence or absence of waters of the United States on a parcel or a written statement and map identifying the limits of waters of the United States on a parcel." 33 C.F.R. § 331.2.

[2] As an aside, during a historic 500-year flood in 2016, this property was unscathed although 80% of the Livingston Parish homes were flooded. Despite his property's remaining high and dry, and despite the property's being positively evaluated for disaster relief by FEMA, USACE refused to process the permits necessary for Lewis to assist the community by building affordable housing for flood victims.

[3] 33 C.F.R. § 328.3(c)(1)(iv) (2020).

alleged wetlands to over 16 acres, or 80%, of the eastern tract. The Corps' new conclusion derived from connecting (a) roadside ditches and (b) a culvert to (c) an unnamed non-"relatively permanent water" tributary, then to (d) Colyell Creek (a "relatively permanent water") several miles away, and ultimately to (e) the traditionally navigable waterway of Colyell Bay ten to fifteen miles from the Lewis property. Following remand, the district court entered a final judgment and rejected Lewis's request for the court to review the revised 2020 AJD.

Lewis appealed the court's judgment on the 2017 AJD. We stayed the appeal, however, pending the Supreme Court's decision in *Sackett*, on which cert. had recently been granted.

In the meantime, Lewis pursued a separate district court case challenging the 2020 AJD. In March 2022, Lewis moved for summary judgment. The USACE responded by offering to withdraw the 2020 AJD and reconsider the jurisdictional issue "promptly" on remand. While Lewis's motion for summary judgment and USACE's motion for voluntary remand were pending, USACE notified Lewis that it had withdrawn the 2020 AJD. The district court granted USACE's motion for voluntary remand and dismissed Lewis's summary judgment motion as moot. Lewis appealed. The appeals were consolidated in this court. We heard oral argument after receiving renewed briefing in the wake of *Sackett*.

Lewis's position on appeal is simple: he wishes to be set free of further intercourse with the USACE because under no interpretation of the administrative facts, as explained by *Sackett*, can his property be regulated as "wetlands" subject to the CWA. The government acknowledges it can no longer defend the merits of the 2017 AJD. The government asserts that the appeal of the 2020 AJD is moot since it strategically withdrew that AJD after Lewis filed his second lawsuit. Alternatively, the government again seeks

remand to reevaluate the facts and study Lewis's property yet again. We find neither government argument, mootness or remand, persuasive.

## II. Discussion

The Clean Water Act protects "navigable waters," which the statute defines as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). Before *Sackett*, the Supreme Court's exegesis of the statutory term "waters of the United States" had been far from clear. The *Rapanos* case yielded a four-Justice plurality opinion that narrowly construed the regulation of "wetlands" under the overall CWA mantle (the "adjacency test"), 547 U.S. at 741–42, 126 S. Ct. at 2226–27 (plurality opinion), but Justice Kennedy's separate concurrence required only a "significant nexus" between a property's "wetland" and adjacent "relatively permanent" waterways, *id.* at 779–80, 126 S. Ct. at 2247–48 (Kennedy, J., concurring in judgment). *Rapanos*'s inconclusive reasoning formed the background of the 2016 and 2017 AJDs. Regulatory ambiguity was heightened by subsequent administrative rulings, guidance, and court opinions.

Fortunately, we need not recount this history in detail. *Sackett* has cleared the air as concerns this case both legally and factually. In *Sackett*, the Supreme Court held that the Clean Water Act "extends to only those wetlands with a continuous surface connection to bodies that are waters of the United States in their own right, so that they are indistinguishable from those waters." 143 S. Ct. at 1344 (internal quotation marks omitted) (quoting *Rapanos*, 547 U.S. at 742, 755, 126 S. Ct. at 2226, 2234). Further, the Court explained, this requires the party asserting jurisdiction over adjacent wetlands to establish "first, that the adjacent [body of water constitutes] . . . 'water[s] of the United States,' (*i.e.*, a relatively permanent body of water connected to traditional interstate navigable waters); and second, that the wetland has a continuous surface connection with that water,

making it difficult to determine where the 'water' ends and the 'wetland' begins." *Id.* at 1341 (alterations in original) (quoting *Rapanos*, 547 U.S. at 742, 126 S. Ct. at 2227). This formulation represents the *Sackett* "adjacency" test. From a legal standpoint, this test significantly tightens the definition of federally regulable wetlands, as compared with the "significant nexus" test and interim administrative regulations.

Because the district court found the 2017 AJD was insufficiently supported under either the *Rapanos* "adjacency" test or the "significant nexus" test, it follows that that AJD cannot generate regulation under the *Sackett* adjacency test. The 2020 AJD fares no better factually under the district court's thorough analysis. Indeed, the Corps cannot escape its concession during the initial litigation that the Lewis tracts cannot satisfy the "adjacency test." As photographs of the property depict, there is no "continuous surface connection" between any plausible wetlands on the Lewis tracts and a "relatively permanent body of water connected to traditional interstate navigable waters." *Id.* Recall that the nearest relatively permanent body of water is removed miles away from the Lewis property by roadside ditches, a culvert, and a non-relatively permanent tributary. In sum, it is not difficult to determine where the "water" ends and any "wetlands" on Lewis's property begin—there is simply no connection whatsoever. There is no factual basis as a matter of law for federal Clean Water Act regulation of these tracts. The district court erred in denying Lewis's motion for summary judgment.

Regarding mootness, the government's attempt to withdraw the 2020 AJD unilaterally and avoid judicial review fails for two reasons. First, it runs afoul of the "voluntary cessation" exception to mootness. The Supreme Court recently held that "voluntary cessation does not moot a case" unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *West Virginia v. EPA*, 142 S. Ct. 2587,

2607 (2022) (quoting *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719, 127 S. Ct. 2738, 2751 (2007)). There is no basis for a reasonable expectation of non-recurrence in this matter. USACE clings to the contention that on remand, after conducting yet further investigation, and despite its previous judicial admission to the contrary, it may somehow "connect" Lewis's wetlands to a relatively permanent waterway, as required by *Sackett.* The agency does not commit to issuing an AJD that extricates the Lewis property from regulated wetlands status, but we conclude that is the only result consistent with *Sackett* and on the factual findings of the district court.

Second, holding that USACE may "withdraw" an AJD, a "final agency action," and thereby avoid mootness, is impermissible for another reason. The Supreme Court holds that an AJD is a final, reviewable agency action. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598–99, 136 S. Ct. 1807, 1814 (2016). In reaching that conclusion, the Court noted the significant legal consequences for a property owner of either a grant or a denial of an AJD. A negative AJD precludes enforcement actions by either USACE or EPA for five years, *see* 33 U.S.C. § 1319, 33 C.F.R. pt. 331, App. C, creating to that extent a safe harbor for the landowner. An affirmative AJD, on the other hand, denies the safe harbor and requires a permit for the landowner to proceed in development. And the permitting process can be "arduous, expensive, and long." *Hawkes*, 578 U.S. at 601, 136 S. Ct. at 1815. But so long as there is an AJD, or its denial, judicial review is required by *Hawkes.* Here, the USACE has kept Lewis in regulatory no-man's-land for over ten years by repeatedly reaching uncertain and unsustainable jurisdictional determinations. Withdrawing the AJD deprived Lewis of a partial safe harbor as to the western tract and portions of the eastern tract. For this court to hold the issue of Clean Water Act jurisdiction mooted by the agency's unilateral withdrawal of an AJD places finality in the

No. 21-30163
c/w No. 23-30387

agency's sole control and would essentially repudiate *Hawkes*.[4] As Lewis properly observes, USACE could create an "endless loop" of financially onerous regulatory activity by thwarting finality in this way. This appeal is not moot.

Finally, remand is not appropriate to allow USACE another attempt to assert federal authority over the Lewis property. The "ordinary remand rule"[5] does not apply where "'[t]here is not the slightest uncertainty as to the outcome' of the agency's proceedings on remand." *Calcutt*, 143 S. Ct. at 1321 (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6, 89 S. Ct. 1426, 1430 n.6 (1969) (plurality opinion)).[6] In its 2020 ruling, to repeat, the district court found, and USACE conceded, that the *Rapanos* adjacency test could not be met on the undisputed facts that the court thoroughly described. Those facts are incompatible with finding adjacency under *Sackett*, and they are indispensable to the agency's assertion of jurisdiction. Where the governing law is now clear, and the relevant facts cannot be disputed, the only possible conclusion is that the Lewis tracts are not wetlands that are adjacent

---

[4] Indeed, USACE intransigently adopts the same arguments that the Supreme Court squarely rejected in *Hawkes*, when, in defending mootness here, it contends that Lewis may eventually seek judicial review—for a third time—either by requesting another AJD, or by contesting an enforcement action. *See Hawkes*, 578 U.S. at 601–02, 136 S. Ct. at 1816.

[5] *See Calcutt v. FDIC*, 143 S. Ct. 1317, 1320–21 (2023) ("It is a well-established maxim of administrative law that '[i]f the record before the agency does not support the agency action, [or] if the agency has not considered all relevant factors, . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." (alterations in original) (quoting *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 106 S. Ct. 1598, 1607 (1985))).

[6] Nor may remand be predicated on the recent regulatory attempt to craft a new rule compliant with *Sackett*. As USACE acknowledged, that Rule, 88 Fed. Reg. 61964, became effective on September 8, 2023, only in states where a previous January 2023 Rule had not been enjoined. Louisiana is not among those states.

No. 21-30163
c/w No. 23-30387

to any relatively permanent jurisdictional water. *See Sackett*, 143 S. Ct. at 1336.[7] And in *Sackett* itself, the Supreme Court did not give the EPA another opportunity, on remand, to assert jurisdiction over the "wetlands" at issue there. *See id.* at 1344; *see also Sackett v. United States*, No. 2:08-cv-00185, Dkts. 139, 140 (D. Idaho Oct. 5, 2023) (entering judgment on remand "in favor of the Sacketts because any wetlands on the Sacketts' property are not 'waters of the United States'").

For these reasons, we VACATE the judgment of the district court and REMAND with instructions to enter judgment in favor of Lewis that the tracts in question are not "waters of the United States" under *Sackett*.

_____

[7] Lewis describes ongoing travails with USACE over other tracts within the Livingston Parish property, which suggest the possibility of future litigation. In light of the agency's utter unwillingness to concede its lack of regulatory jurisdiction in this case following *Sackett*, we admonish it not to pursue actions against Lewis that could be challenged under the Equal Access to Justice Act's bad-faith provision. 28 U.S.C. § 2412(b); *see Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 564 (5th Cir. 2015) (imposing attorney fees for bad faith of government agency).

No. 21-30163
c/w No. 23-30387

Stephen A. Higginson, *Circuit Judge*, concurring:

I write separately because I would rest our mootness analysis solely on voluntary cessation rather than also relying on *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590 (2016). *See* Op. at 6-8. *Hawkes* held that an approved jurisdictional determination (AJD) satisfies the requirements for judicial review under the Administrative Procedure Act (APA). 578 U.S. at 597. That is, an AJD is a "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. That parties have a right to judicial review of AJDs under the APA does not resolve whether a challenge to an AJD is mooted by the AJD's withdrawal. Finality goes to whether review is permissible now under the APA, mootness goes to whether a court can grant effectual relief. Imagining the justiciability hurdle is standing makes the mismatch clearer: if Lewis had no interest in the property, his standing problem would not be resolved by the fact that an AJD is a final agency action reviewable under the APA. I agree with the court's discussion of the legal consequences that AJDs carry, and that the withdrawn AJD deprived Lewis of partial safe harbor, but I do not agree that the *Hawkes* finality holding goes to mootness here. *See* Op. at 7-8.

I also do not join the court's suggestion, in the final footnote, that USACE might be subject to bad faith sanctions in litigation not before us and, indeed, not yet even undertaken.

10